# Wytheville.

## WHEBY v. MOIR & OTHERS.

### JUNE 16, 1904.

1. FRAUD—*How Charged and Proved—Participation of Grantee—Case in Judgment.*—Where fraud is relied on to set aside a conveyance it must be plainly averred and distinctly proved that the grantee had knowledge of the fraudulent intent of the grantor, or in some way participated in the fraud. In the case in judgment, the evidence falls far short of the probative force necessary to establish fraud on the part of the grantee.

2. APPEAL AND ERROR—*Amount in Controversy—Failure to Summon Some of Appellees.*—The aggregate amount of the decrees against an alleged fraudulent grantee, on setting aside a deed for fraud, fixes the jurisdiction of this court, and an appeal when awarded at the instance of such grantee brings up the whole record, and if it appears that on account of an omission on the part of the clerk of this court, process has not been served on some of the appellees, and the aggregate amount of the debts of those served does not reach the jurisdictional limit of this court, it will not dismiss the appeal, but direct process to issue now against those not previously served. In the case in judgment the defect, if any, was cured by a general appearance for all of the appellees.

Appeal from a decree of the Corporation Court of the city of Roanoke in a suit in chancery, wherein the appellees were the complainants, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case.

*S. H. Hoge, Edward Lyle* and *J. D. Smith,* for the appellant.

*Robertson, Hall & Woods,* for the appellees.

KEITH, P., delivered the opinion of the court.

The appellees filed their bill in the Corporation Court of the city of Roanoke, in which they alleged that Charles Wheby had, for some time past, been conducting a general merchandise store in that city; that they had extended credit to him upon the faith of goods contained in his store; and that, on June 18, 1902, he and his wife executed a deed of bargain and sale ·to one Jabborien Elias Wheby, of all their stock of merchandise and other goods and chattels. The alleged consideration for this deed was the sum of $1,053.39, cash in hand, the receipt of which was acknowledged. The bill alleges that the said conveyance of June 18, 1902, is fraudulent, and that no part of the consideration mentioned was paid; that it was executed for the purpose of hindering, delaying and defrauding the creditors of Charles Wheby, and especially the complainants, in the collection of their debts, a fraud of which the said Jabborien Elias Wheby had knowledge, and in which he participated.

The defendants answered and admitted the purchase and sale of the stock of merchandise, goods and chattels, alleged that it was for a valuable consideration paid in cash, and denied that it was made for the purpose of hindering, delaying and defrauding the creditors of Charles Wheby in the collection of their debts, but on the contrary allege that the several articles enumerated in said conveyance were sold in good faith for a valuable consideration, and without fraudulent intent.

Numerous depositions were taken and the case came on to be heard before the Corporation Court, which decreed that the sale of the stock of goods referred to in the bill be set aside and annulled, as made with intent to hinder and delay the creditors of Charles Wheby. From that decree the purchaser, Jabborien Elias Wheby, obtained an appeal.

It is settled by the decisions of this court, that where fraud is relied upon to set aside a conveyance it must be plainly averred and distinctly proved. In this case it was necessary to aver and prove that Charles Wheby executed the bill of sale of the merchandise and other goods and chattels, which passed by his deed of the 18th of June, 1902, with intent to hinder, delay, and defraud his creditors, of which intent the vendee, Jabborien Elias Wheby, had knowledge.

It may be conceded that Charles Wheby, the vendor, was actuated by the intention to defraud his creditors, but the proof is wholly insufficient to bring home knowledge of such purpose to his vendee. The vendor and vendee are brothers, and form part of a colony of Syrians living in the city of Roanoke, most of whom appear to be engaged in merchandising. Jabborien was a peddler. He seems to have been industrious and frugal. The percentage of profit from the business in which he was engaged is believed to have been large. His expenses were insignificant. The evidence which he adduces is to be found in the testimony of those with whom he had business transactions. They are people of his own race and nation, whose manners, habits, customs, and methods of business are very different from ours. They speak our language imperfectly, and appear to understand it with difficulty. It cannot be denied that these circumstances place them somewhat at a disadvantage. It is true that this may work both ways, and that while it may render it more difficult for them to establish the truth of a transaction, if it be a fair one, it on the other hand renders more difficult the discovery of fraud where it has been perpetrated. They come before this court, however, attended by all the presumptions of innocence. We cannot assume their guilt because they are strangers, nor condemn them as dishonest because they are ignorant of our language, our customs and our laws.

The proof is that the whole of the purchase money was paid in cash in the presence of witnesses, and the individuals are

named from whom Jabborien Wheby collected the several sums which, added together, made up the price he paid for the goods. There is no evidence that he knew that Charles Wheby was indebted, or that he entertained the purpose of defrauding his creditors. There are slight circumstances of suspicion. They appear to have taken unusual precautions with reference to the execution of the conveyance, and the inventory and transfer of the possession of the goods which passed under it; and it is argued that men engaged in an honest transaction do not anticipate the accusation of fraud. It is true that "the wicked flee when no man pursueth," but, on the other hand, the absence of witnesses might have subjected them to the imputation that there was something to conceal. In our opinion the testimony falls far short of that probative force which is necessary to establish a fraud.

Upon the merits of the case, therefore, we are of opinion that the Hustings Court erred in setting aside as fraudulent the deed of June 18, 1902.

It is claimed on the part of appellees that the case is not properly before this court, because the sum due to the parties who have been summoned as appellees is less than $500, which was necessary to give this court jurisdiction at the date when the appeal in this case was allowed.

The decree appealed from is copied into the petition for appeal. It appears from an inspection of that decree that the several sums decreed against the appellant aggregated more than $500, and it is conceded that under the decisions of this court it had jurisdiction to entertain this appeal if the process had been issued against all of the creditors named in the decree appealed from. When the petition and record were presented to the judge of this court, and the appeal awarded its effect was to bring up for review the entire record, so that any error to the prejudice of appellant might be corrected, and, if it were necessary, to protect appellant in the enjoyment of this right, we

would now direct process to issue against those parties upon whom it has not been heretofore served, in order that what is at most an omission on the part of the clerk might be corrected, but counsel, by entering a general appearance for appellees, have obviated the necessity for this, all of the appellees having identical interests in this controversy.

We think the motion to dismiss should be overruled, and this court, proceeding to enter such decree as the Hustings Court ought to have entered, it is ordered that the decree complained of be reversed, and the bill of complainants be dismissed, with costs to the appellant.

*Reversed.*